ORDERED.

**Dated: October 06, 2026**

Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re: Case No. 2:24-bk-00747-FMD
Chapter 11

Xtreme Landscaping &
Grounds Maintenance, LLC,

Debtor.
____________________________________/

**MEMORANDUM OPINION ON PLAN ADMINISTRATOR'S MOTION TO EXTEND DEADLINE TO FILE AVOIDANCE ACTIONS AND TEE-OFF TEMPS, INC.'S MOTION FOR RECONSIDERATION**

Federal Rule of Bankruptcy Procedure 9006(b)(1)(A) permits a bankruptcy court, "for cause," to enlarge the time for taking an act before the applicable deadline expires. The Eleventh Circuit Court of Appeals has held that Rule 9006(b) applies to the statutory deadline for filing avoidance actions under 11 U.S.C. § 546(a). Here, the Court, over the objection of litigation targets, granted the Plan Administrator's motion for an extension of the § 546(a) deadline without an evidentiary hearing. This

memorandum opinion supplements the Court's order granting the Plan Administrator's motion for an extension of time and addresses the motion for reconsideration filed by one of the litigation targets.

## I. BACKGROUND

Debtor previously operated a commercial landscaping business. In 2023 and 2024, Debtor experienced operating losses and was unable to service more than $20 million in debt it owed to its principal creditor, MSouth Capital (Doc. No. 22, ¶ 1).

In January 2024, Debtor entered into a forbearance agreement with MSouth Capital. Under that agreement, Debtor engaged a financial consultant, Glen Devane, as its interim controller (Doc. No. 22, ¶¶ 1 - 3; Doc. No. 165, ¶ 16). In April 2024, Debtor sold substantially all its assets to an unrelated third party (Doc. No. 22, ¶¶ 1 - 3). Debtor has not operated since the sale closed.

### A. Debtor files for Chapter 11 bankruptcy.

On May 25, 2024, Debtor filed this Chapter 11 bankruptcy case to liquidate its remaining assets, including potential causes of action, for the benefit of its creditors (Doc. Nos. 1, 22). In its bankruptcy schedules, Debtor listed approximately $3.6 million in unsecured debt (Doc. No. 24). Mr. Devane, acting as Debtor's interim controller, signed Debtor's bankruptcy petition and schedules on Debtor's behalf.

**B. Debtor discloses potentially avoidable transfers.**

In its Statement of Financial Affairs, Debtor listed the creditors to whom it made payments within 90 days before the date of the bankruptcy petition (Doc. No. 25). The list included the following creditors:

| **Creditor** | **Amount** |
|---|---|
| Big Shot Rides, LLC ("Big Shot") | $15,481.50 |
| Tee-Off Temps, Inc. ("Tee-Off Temps") | $221,170.28 |
| Palmdale Oil ("Palmdale") | $83,065.69 |

(Doc. No. 25 at 2, 15).

Debtor's Statement of Financial Affairs also identified the recipients of payments and transfers that Debtor made for the benefit of insiders in the year before it filed for bankruptcy. The list included Debtor's $1,202,000.00 transfer to Core Property Capital ("Core Property") (Doc. No. 25 at 2). For ease of reference, the Court will sometimes refer to Big Shot, Tee-Off Temps, Palmdale, and Core Property as the "Litigation Targets."

Debtor's transfers to the Litigation Targets may be subject to avoidance—in other words, recoverable for the benefit of the bankruptcy estate—under 11 U.S.C. §§ 547 and 548.

### C. Debtor's confirmed Chapter 11 plan provides for a Plan Administrator to pursue avoidance actions.

On December 20, 2024, Debtor filed its *Third Amended Chapter 11 Plan of Liquidation* (the "Plan") (Doc. No. 112). The Plan provided for the appointment of a Plan Administrator, who was charged with (among other things) ensuring that Debtor turned over its books and records and investigating and pursuing all Debtor's "causes of action." The Plan defined "causes of action" to include any avoidance actions (Doc. No. 112, §§ 9.01, 9.02, 9.03) and identified the potential targets of avoidance actions, including the Litigation Targets.

Under the Plan, general unsecured creditors will share pro rata in the recoveries from any avoidance actions (Doc. No. 112, § 5.04).

The Court confirmed Debtor's Plan on January 27, 2025 (the "Confirmation Order") (Doc. No. 118).

### D. The Plan Administrator appears in Debtor's bankruptcy case.

On February 7, 2025, Amy Mayer, at that time a partner at the Stichter, Riedel, Blain & Postler, P.A. law firm, filed her *Notice of Appearance as Plan Administrator* (Doc. No. 122).

On August 4, 2025, Ms. Mayer (the "Plan Administrator"), after practicing law with the Stichter Riedel law firm for 22 years, moved to the Berger Singerman LLP law firm. She took more than 100 active matters with her to Berger Singerman (Doc. No. 165, ¶ 10). As described by the Plan Administrator in more detail below, Berger

Singerman's process of conducting conflicts checks was labor-intensive and time-consuming.

On October 20, 2025, after Berger Singerman had completed its conflicts checks, the Plan Administrator filed an application to employ Berger Singerman as her counsel (Doc. No. 143). No objections were filed, and on November 12, 2025, the Court entered an order approving Berger Singerman's retention as the Plan Administrator's counsel (Doc. No. 151).

**E. The Plan Administrator moves to extend the deadline for filing avoidance actions.**

Under Bankruptcy Code § 546(a)(1), the Plan Administrator's deadline to file actions to avoid transfers by Debtor as preferential payments under § 547 or as fraudulent transfers under § 548 was two years after the filing of Debtor's bankruptcy petition. On May 25, 2026, one day before the deadline lapsed, the Plan Administrator filed a *Motion for Extension of Time to File Avoidance Actions* (the "Initial Extension Motion") (Doc. No. 156), seeking an extension of 90 days.

The Plan Administrator asserted three grounds for the requested extension: (1) she had identified avoidance claims in excess of $1 million; (2) she needed additional time to properly serve several demand letters and any subsequent service of process; and (3) failing to extend the deadline would prejudice the bankruptcy estate and creditors (Doc. No. 156, ¶¶ 6, 19). The Initial Extension Motion was not supported by an affidavit or declaration.

One day after the deadline for filing avoidance actions, the Plan Administrator served demand letters on 18 potential targets of avoidance actions, including three of the Litigation Targets (Doc. No. 169, ¶ 14; Doc. No. 170, ¶ 15).

Core Property and Tee-Off Temps filed written objections to the Initial Extension Motion (Doc. Nos. 158, 159). Both conceded that Eleventh Circuit precedent authorizes bankruptcy courts to extend the § 546(a) deadline for cause under Rule 9006(b). However, they argued there was no evidence in the record to support the showing of "cause" required by Rule 9006(b). They also argued that because Debtor's bankruptcy schedules listed the amounts of its payments to creditors and transfers to insiders within the avoidance period, the Plan Administrator—who they have asserted had sufficient information to serve demand letters on potential litigation targets—also had sufficient information to file avoidance actions before the § 546(a) deadline.

On June 10, 2026, the Court conducted a hearing on the Initial Extension Motion and Core Property's and Tee-Off Temps' written objections. At the conclusion of the hearing, the Court (1) directed the Plan Administrator to file an amended motion supported by an affidavit or declaration to establish cause; and (2) set a date for parties to file objections. The Court rescheduled the hearing for July 22 (Doc. No. 162).

### F. The Plan Administrator files an amended motion to extend the deadline for filing avoidance actions.

On June 30, 2026, the Plan Administrator filed her *Amended Motion for Extension of Time to File Avoidance Actions* (the "Amended Extension Motion") (Doc. No. 165). The Amended Extension Motion included the Plan Administrator's declaration stating that she had personal knowledge of the factual matters set forth in the Amended Extension Motion and declaring under penalty of perjury that those matters are true and correct (Doc. No. 165, Ex. 2).

The Plan Administrator has attested to the following:

- In March 2025 (before she transitioned to the Berger Singerman firm), the Plan Administrator had requested business and accounting records from Debtor and its former accountants (Doc. No. 165, ¶ 8). Although Debtor did not produce any records, on May 2, 2025, the accountants produced nearly 8,000 documents (Doc. No. 165, ¶ 9).

- Between May and July 2025, the Plan Administrator reviewed the nearly 8,000 documents she had received from the accountants. However, neither Debtor nor the accountants produced any bank statements, canceled checks, invoices, or other records supporting the alleged transfers identified in the Plan or otherwise (Doc. No. 165, ¶ 9).

- In August 2025, the Plan Administrator transitioned her law practice from the Stichter Riedel firm to Berger Singerman. The transition, which involved more than 100 active matters, was extraordinarily labor-intensive and time-consuming. During the transition, which took months to complete, the Plan Administrator worked, on average, 70 hours per week (Doc. No. 165, ¶ 10).

- The transition required the Plan Administrator to run comprehensive conflicts checks across every client, affiliate, and adverse party (which, in a bankruptcy case, may involve hundreds of parties for one matter) (Doc. No. 165, ¶ 10).

- In the process of conducting conflicts checks, the Plan Administrator discovered that Berger Singerman had previously represented Debtor in unrelated matters, requiring the Plan Administrator to make supplemental disclosures to the Court and parties in interest (Doc. No. 165, ¶ 11).

- Once Berger Singerman was formally retained on November 12, 2025, the Plan Administrator asked her counsel, Berger Singerman attorney Erin Hoskins, to search Berger Singerman's files for all information relating to potential avoidance actions, including the records from the accountants that the Plan Administrator had previously reviewed. However, Ms. Hoskins was unable to locate any information. The Plan Administrator also asked Ms. Hoskins to reach out to Debtor's counsel for information regarding potential avoidance actions, but Ms. Hoskins did not receive a response by the statutory deadline (Doc. No. 165, ¶ 15).

- Debtor is defunct and has no ongoing business, custodian of records, or internal source of information. And Debtor's counsel informed the Plan Administrator that Mr. Devane, Debtor's former officer and interim controller, did not have any of Debtor's records (Doc. No. 165, ¶ 16).

- As of the June 10 hearing on the Initial Extension Motion, the Plan Administrator believed that Stichter Riedel had not successfully transferred to Berger Singerman the records that the accountants had produced (Doc. No. 165, ¶ 21).

- After the June 10 hearing, the Plan Administrator asked Stichter Riedel to transfer all files relating to this bankruptcy case, including the records previously produced by the accountants. Stichter Riedel believed it had already

> transferred all the requested documents, and eventually, Berger Singerman's IT department was able to retrieve the transferred files, including the records produced by the accountants (Doc. No. 165, ¶ 22).

The Court infers that Debtor's accountants had electronically transferred 8,000 documents to the Plan Administrator while she was at Stichter Riedel, that Stichter Riedel transferred those documents electronically to Berger Singerman, and that Berger Singerman had some difficulty in retrieving the documents on its computer system.

The Plan Administrator further attested that, despite her prior review of the accountants' records, she lacked sufficient information and documentary support to commence avoidance actions, or any other estate causes of action, consistent with Federal Rule of Bankruptcy Procedure 9011 (Doc. No. 165, ¶ 23). She also attested that the estate holds roughly $2.2 million in potential avoidance claims, and that, absent meaningful recoveries on the avoidance actions, general unsecured creditors will receive little or no distribution (Doc. No. 165, ¶ 24).

Core Property, Big Shot, and Palmdale filed written objections to the Amended Extension Motion (Doc. Nos. 169, 170, 171).[1] All three objections concede (or assume) that Rule 9006(b)'s "for cause" standard governs, but they argue that the Plan

---

[1] Tee-Off Temps, which had filed a written objection to the Initial Extension Motion (Doc. No. 158), did not file a separate objection to the Amended Extension Motion.

Administrator failed to establish cause sufficient to warrant an extension of the § 546(a) deadline. Palmdale also argues that, to the extent the Court was willing to entertain the Plan Administrator's sworn allegations as constituting "cause," the Court should conduct an evidentiary hearing (Doc. No. 171 at 3).

**G. The Court extends the deadline for filing avoidance actions.**

On July 22, 2026, the Court conducted a hearing on the Plan Administrator's Amended Extension Motion. At the hearing, the Litigation Targets again agreed that Rule 9006(b) authorizes this Court to extend the § 546(a) deadline, and that the relevant standard under Rule 9006(b)(1)(A) is "cause." However, they argued that the Plan Administrator failed to satisfy Rule 9006(b)'s "cause" standard because, they contend, the requesting party must satisfy two requirements: a diligent investigation and an inability to complete the investigation despite the investigating party's diligence (Doc. No. 170, ¶ 12).

In particular, the Litigation Targets argued that because Debtor had identified the recipients of potentially avoidable transfers in its Statement of Financial Affairs and the Plan and the Plan Administrator had sufficient information to send demand letters to the Litigation Targets before the § 546(a) deadline, she therefore had sufficient information to file avoidance actions before the § 546(a) deadline.

The Plan Administrator responded that it is one thing to send a demand letter—which is not subject to Rule 9011—but a very different thing to file a

complaint to avoid a preferential transfer in a manner consistent with the obligations of Rule 9011. The Plan Administrator contended that without bank records, canceled checks, or wire transfers, she could not certify under Rule 9011 that she had evidentiary support for the potential avoidance actions.

Although the Litigation Targets did not identify any disputes with the Plan Administrator's factual recitations, they contended that the Court should not grant the Amended Extension Motion without conducting an evidentiary hearing.

After carefully considering the parties' arguments, the Court denied the Litigation Targets' request for an evidentiary hearing because they had not identified any disputed facts. The Court then found that the Plan Administrator's sworn allegations established the cause required by Rule 9006(b) and granted the Amended Extension Motion, extending the § 546(a) deadline to September 20, 2026.

On July 30, 2026, the Court entered the Extension Order (Doc. No. 173), reserving jurisdiction to issue a memorandum opinion setting forth its reasoning.

### H. The Litigation Targets appeal and seek reconsideration of the Extension Order.

Tee-Off Temps timely filed the Reconsideration Motion (Doc. No. 175), asking the Court to reconsider its denial of the request for an evidentiary hearing on the

Amended Extension Motion. And Core Property and Palmdale timely filed notices of appeal and motions for leave to appeal (Doc. Nos. 177, 178, 180, 181).[2]

## II. ANALYSIS

The Court must decide (A) whether it properly exercised its discretion to extend the § 546(a) deadline for cause; and (B) whether to grant Tee-Off Temps' motion for reconsideration of the denial of its request for an evidentiary hearing.

### A. THE COURT PROPERLY EXERCISED ITS DISCRETION TO EXTEND THE § 546(A) DEADLINE FOR CAUSE.

Under Rule 9006(b)(1)(A), if a party moves for an extension of time before the applicable deadline expires, the Court may—*with or without a motion or notice*—extend the time "for cause."[3] If the request is made after the deadline has expired, Rule 9006(b)(1)(B) requires the moving party to demonstrate that its failure to act "resulted from excusable neglect."[4]

Here, the Plan Administrator moved for an extension of time before the § 546(a) deadline expired. As set forth below, the Court finds that Rule 9006(b) applies to the § 546(a) deadline, and the Plan Administrator demonstrated cause for the requested extension.

---

[2] The District Court denied the motions for leave to appeal. *Core Property Capital v. Mayer*, 2:26-cv-02392-KCD, Doc. No. 7; *Palmdale Oil Co. v. Mayer*, 2:26-cv-02398-KCD, Doc. No. 8.

[3] Fed. R. Bankr. P. 9006(b)(1)(A).

[4] Fed. R. Bankr. P. 9006(b)(1)(B).

**1. Under Rule 9006(b)(1)(A), the Court has discretion to extend the § 546(a) deadline "for cause."**

The Eleventh Circuit appears to be the only circuit court of appeals to have ruled on the issue of whether Rule 9006(b)(1) authorizes bankruptcy courts to extend the statutory deadline under Bankruptcy Code § 546(a).[5]

In *In re International Administrative Services, Inc.* ("*IAS*"),[6] the bankruptcy court granted the trustee's motion to extend the § 546(a) deadline through a hearing scheduled to be conducted before a special master on discovery issues on July 29, 1998; however, that hearing was not conducted until September 3. At the September 3 hearing, the bankruptcy court orally granted a second extension of the deadline, but the court did not enter a written order until September 17. Before the second extended deadline expired, the trustee filed a fraudulent transfer adversary proceeding against two defendants. The defendants lost at trial and appealed.

The threshold issue before the Eleventh Circuit was whether the § 546(a) deadline had expired before the trustee filed his adversary proceeding.[7] At the outset, the Eleventh Circuit found "no merit" to the defendants' argument that bankruptcy

---

[5] *Kokoszka v. Naguib (In re Naguib)*, 675 B.R. 22, 39 (Bankr. N.D. Ill. 2025) (observing that *IAS* is "the only circuit level opinion on the issue" of whether the § 546(a) deadline may be extended under Rule 9006(b)).

[6] *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689 (11th Cir. 2005).

[7] *Id.* at 698.

courts cannot extend the § 546(a) deadline under Rule 9006(b).[8] The court acknowledged that Rule 9006(b)(1) "does not explicitly encompass statutory timeframes."[9] But the court explained that Rule 9006 applies to "these rules," and "bring[s] all of the Federal Rules of Bankruptcy Procedure under its umbrella," including Rule 7001, which defines an adversary proceeding as including a proceeding "to recover money or property."[10]

However, due to the gaps between the orders that extended the deadline and the issue of whether the operative date of the first extension was July 29 or the "hearing set before the special master," the Eleventh Circuit went on to provide an alternative basis for its ruling. But rather than looking to the "excusable neglect" standard of Rule 9006(b)(1)(B)—which authorizes the bankruptcy court to grant an extension requested *after* a deadline has expired—the Eleventh Circuit considered the appropriateness of the extension under the more demanding "equitable tolling" analysis. The court concluded that the trustee satisfied the requirements for equitable tolling because he demonstrated that he acted with due diligence to discover the

[8] *Id.* at 699.

[9] *Id.*

[10] *Id.*

negligently concealed fraud or that one of the parties involved in the alleged fraud took positive steps to conceal the transfers.[11]

Notwithstanding the Eleventh Circuit's equitable tolling analysis, *IAS*'s primary holding is that bankruptcy courts have discretion to extend the § 546(a) deadline under Rule 9006(b).[12] The issue before the Court, then, is whether the Plan Administrator has established cause to extend the § 546(a) deadline under Rule 9006(b)(1)(A).

**2. The Plan Administrator has demonstrated "cause."**

In a different context, the bankruptcy court in *In re Wooten* observed that although the term "cause" is used repeatedly in the Bankruptcy Code and the Bankruptcy Rules,[13] neither the Code nor the Rules define "cause."[14] The *Wooten* court cited *Collier on Bankruptcy*'s discussion of the cause required to extend a deadline under Rule 9006. *Collier's* discussion explains that a bankruptcy court's decision to grant an extension for cause is within its discretion; that "some

---

[11] *Id.* at 702.

[12] *Id.* at 695 – 99. The Court notes that at least one bankruptcy court has held that the § 546(a) deadline cannot be extended "for cause" under Rule 9006. *See, e.g., In re Walnut Hill, Inc.*, 2018 WL 2672242, at *2 (Bankr. D. Conn. June 1, 2018). The Litigation Targets did not raise this issue in their written objections or at the June 10 or July 22 hearings.

[13] *See e.g.*, 11 U.S.C. §§ 362(d)(1), 503(a), 707(a), and 1112(b)(1); Fed. R. Bankr. P. 3003(c)(3) and 9006(b)(1).

[14] 620 B.R. 351, 357 – 58 (Bankr. D.N.M. 2020); *see also* 10A *Collier on Bankruptcy* ¶ 9006.06[2] (16th ed. 2026) (explaining that "[w]hat constitutes cause is not set out in the rule.").

justification" for the requested enlargement of time must be shown; and that an extension should not be granted when the moving party has been guilty of negligence or bad faith or has abused the privilege of extensions.[15] But *Collier* cautions that courts should be wary of granting motions for extensions of time as a matter of course, that the requirement of cause should be taken seriously, and that proceedings should not be delayed without reason.[16]

Core Property cites the *IAS* opinion in support of its argument that a finding of cause requires the requesting party to satisfy two requirements: a diligent investigation and an inability to complete the investigation despite the investigating party's diligence. But Core Property's reliance on *IAS* is misplaced: the Eleventh Circuit's discussion of diligence in *IAS* arises only in the context of its *alternative* equitable tolling analysis, and the court itself stated that it addressed the issue of equitable tolling only in "an abundance of caution."[17] In making their argument, the Litigation Targets have incorrectly conflated the Eleventh Circuit's equitable tolling analysis with *IAS*'s primary holding: Rule 9006(b)(1) applies to the § 546(a) deadline.

---

[15] 10A *Collier on Bankruptcy* ¶ 9006.06[2] (emphasis added).

[16] *Id.*

[17] *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 700 (11th Cir. 2005).

The Litigation Targets also cite the bankruptcy court's decision in *In re American Purchasing Services, LLC*[18] to support their argument. But in *American Purchasing*, the bankruptcy court denied the Chapter 7 trustee's motion to extend the § 546(a) deadline on facts very different from those presented in this case.

In *American Purchasing*, the trustee filed a motion to extend the § 546(a) deadline months before the deadline expired on the grounds that he had not yet negotiated a "carve out" for the estate with the creditor who held a security interest in any litigation proceeds. In other words, the trustee wanted to ensure that the estate would benefit from any avoidance-claim recoveries before he embarked on what could be costly litigation. But the trustee did not claim that he was otherwise unable to file the avoidance actions before the deadline, and the timing of the trustee's requested extension and the bankruptcy court's ruling left the trustee with ample time to file avoidance actions.[19] Although the court ruled that the trustee had not satisfied the requirements of equitable tolling, the court could just as easily have found that the trustee had not established cause for the requested extension.

Here, the Court finds that the Plan Administrator has provided sufficient justification for the requested extension for the following reasons:

---

[18] 2022 WL 17096649, at *3 (Bankr. S.D. Fla. Nov. 21, 2022).

[19] The bankruptcy court's docket in *American Purchasing*, Case No. 20-23495-SMG, reflects that the trustee filed eleven avoidance actions before the § 546(a) deadline expired.

**a. The Plan Administrator's investigation into potential avoidance claims was delayed.**

The Plan Administrator has demonstrated that her investigation was delayed in large part by (i) Debtor's lack of a principal with actual knowledge of Debtor's financial affairs; (ii) her transition to Berger Singerman, including the conflicts checks that had to be completed before she could continue serving as Plan Administrator and retain the law firm as her attorney in this case; and (iii) the difficulties encountered in locating Debtor's records after their transfer to Berger Singerman.

**b. The Plan Administrator is required to comply with Rule 9011 and § 547(b).**

Rule 9011 requires that an attorney presenting a pleading to the court certify—after an inquiry reasonable under the circumstances—that "the allegations and factual contentions have evidentiary support."[20] In 2019, § 547(b) was amended to require plaintiffs to conduct reasonable due diligence before suing to avoid a preferential transfer; § 547(b) specifically requires the plaintiff to "tak[e] into account a party's known or reasonably knowable affirmative defenses."

According to *Collier*, "[t]he most plausible explanation [for the amendment to § 547] is that it seems to have been the practice for chapter 11 liquidating trusts to

[20] Fed. R. Bankr. P. 9001(b)(3).

employ what are called, in the vernacular, 'preference mills.'"[21] *Collier* succinctly described this "business model":

> Their business model is simple: they take the list from the debtor's statement of affairs of all payments the debtor made in the 90 days before bankruptcy and file preference actions against all the recipients without undertaking any investigation of the merits of the causes of action, such as whether the transfer was ordinary course, whether it was COD or otherwise a contemporaneous exchange, or any other defense.[22]

Ironically, the Litigation Targets appear to argue that the Plan Administrator, rather than seeking an extension of the § 546(a) deadline, should have followed the criticized "business model" that gave rise to the 2019 amendment to § 547(b).

**c. The Plan Administrator is not guilty of negligence or bad faith.**

The Court finds that (i) the Plan Administrator is not guilty of negligence or bad faith, and (ii) in requesting a single extension, the Plan Administrator has not abused the privilege of extensions.

The Court understands the Litigation Targets' contention that the Plan Administrator could have been "more diligent," but even assuming that to be the

[21] 5 *Collier on Bankruptcy* ¶ 547.02A (16th ed. 2026).

[22] *Id.*

case, the absence of "more" diligence does not rise to the level of negligence, much less bad faith.[23]

**d. The Litigation Targets are not prejudiced by a brief extension of the § 546(a) deadline.**

Core Property argues that "[t]he primary purpose of statutes of limitations [such as § 546(a)] is to protect defendants from having to defend against stale claims at a time when 'evidence has been lost, memories have faded, and witnesses have disappeared'" (Doc. No. 170, ¶ 10) (quoting *In re Interstate Bakeries Corp.*, 460 B.R. 222, 232 (B.A.P. 8th Cir. 2011)). But Core Property does not explain how evidence will be lost, memories will fade, or witnesses will disappear if the Plan Administrator files an avoidance action 27 months—rather than 24 months—after Debtor filed its bankruptcy case. And none of the Litigation Targets has shown any prejudice from the short extension of the deadline.

---

[23] *See, e.g., Ianuale v. Borough of Keyport*, 2017 WL 3503332, *4 (D.N.J. Aug. 16, 2017) (in finding that good cause existed to vacate default judgment, court observed that "[a]dministrative delay by Defendants' insurance carrier and a five-day delay by Defendant Kerm's counsel due to a family vacation may indicate a certain lack of diligence, particularly on the part of the insurance carrier, in timely responding to Plaintiffs' *pro se* pleadings, but clearly do not rise above the threshold of mere negligence necessary to show willfulness or bad faith on the part of Defendants here.").

Curiously, it appears that the Litigation Targets would have preferred the Plan Administrator to have sued them before taking the time to investigate further, assess their defenses, and engage in pre-suit negotiations.[24]

**e. Debtor's unsecured creditors will be prejudiced if the Court does not extend the § 546(a) deadline.**

Debtor and its insiders will not benefit from any recoveries in the avoidance actions. Rather, the recoveries will be the primary—apparently, the only—source of distributions to Debtor's unsecured creditors. In other words, Debtor's unsecured creditors would be harmed if the Court denied the Amended Extension Motion, while the Litigation Targets would receive a "windfall" by retaining potentially avoidable preferential transfers.

## B. THERE IS NO BASIS FOR THE COURT TO RECONSIDER THE EXTENSION ORDER.

As set forth below, the Court finds, first, that notwithstanding the pending appeals, the Court has jurisdiction to consider the Reconsideration Motion; and second, that Tee-Off Temps fails to demonstrate grounds for reconsideration.

---

[24] The Court also notes that Core Property is not a Litigation Target because it is an unfortunate creditor who received a payment within § 547's 90-day preference period. Rather, Debtor identified Core Property as an insider of Debtor who received $1,202,000.00 from Debtor in December 2023.

**1. The Court has jurisdiction to deny the Reconsideration Motion.**

Under Rule 8008(a), if a party timely files a motion that the bankruptcy court lacks jurisdiction to grant because an appeal has been docketed and is pending, the court may (a) defer considering the motion; (b) deny the motion; (c) state that it would grant the motion if the appellate court remands for that purpose; or (d) state that the motion raises a substantial issue.

Therefore, notwithstanding the pending appeals, this Court has jurisdiction to deny the Reconsideration Motion.

**2. Tee-Off Temps has failed to demonstrate that the Extension Order constitutes clear error or will result in a manifest injustice.**

Reconsideration of an order is an extraordinary remedy that should only be granted sparingly.[25] Reconsideration is warranted only when (a) there has been an intervening change in controlling law; (b) newly discovered evidence would merit a different result; or (c) reconsideration is necessary to correct a clear error of law or fact or to prevent a manifest injustice.[26]

Here, Tee-Off Temps does not allege there has been an intervening change in controlling law or that newly discovered evidence would merit a different result.

[25] *United States v. Thompson*, 2024 WL 4471414, at *2 n.2 (11th Cir. Oct.. 11, 2024).

[26] *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008).

Instead, Tee-Off Temps alleges that the Court's denial of its request for an evidentiary hearing constituted clear error or, alternatively, resulted in manifest injustice (Doc. No. 175, ¶ 16).

In its Reconsideration Motion, Tee-Off Temps alleges that the Plan Administrator's Amended Extension Motion "relied upon numerous factual assertions concerning her diligence in investigating avoidance actions, the effect of her law firm transition, the alleged inability to obtain records, efforts undertaken to investigate potential claims, the necessity of additional time, the inability to comply with Rule 9011 without an extension, and the alleged benefit to the estate" (Doc. No. 175, ¶ 5).

Tee-Off Temps alleges that it disputed the Plan Administrator's factual allegations and that "[b]ecause those factual assertions were disputed, the Court necessarily resolved questions of fact in determining that 'cause' existed under Rule 9006(b)" (Doc. No. 175, ¶¶ 6, 7). According to Tee-Off Temps, "where disputed adjudicative facts determine whether a party has satisfied its burden of proof, those facts ordinarily should be established through competent evidence" (Doc. No. 175, ¶ 10).

The Court concludes the Reconsideration Motion should be denied for two reasons.

First, Tee-Off Temps' argument contradicts the plain language of Rule 9006(b), which grants courts discretion to extend deadlines for cause "with or without a motion or notice."[27] Unlike many other provisions in the Bankruptcy Code and Bankruptcy Rules, Rule 9006(b) does not condition an extension on "notice and a hearing."[28]

And even in cases where the Bankruptcy Code or Bankruptcy Rules require "notice *and a hearing*," "a bankruptcy judge 'does not abuse her discretion in reaching a decision without holding an evidentiary hearing where the record provide[s] ample evidence on which the court could make such a decision.'"[29] "[I]t is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record."[30]

Second, contrary to Tee-Off Temps' allegations, the Court *did* receive competent evidence in the form of the Plan Administrator's sworn testimony regarding her investigation of potential avoidance actions, the effect of her law firm transition, her inability to obtain records, the need for additional time, her inability

---

[27] Fed. R. Bankr. P. 9006(b)(1)(A).

[28] *See, e.g.*, 11 U.S.C. §§ 362(d), 363(b)(1), 364(b), 502(b), 503(b), 543(c); Fed. R. Bankr. P. 1009(a)(2), 3002.1(e), 3012(a), 3018(a)(3).

[29] *Estate of Townsend v. Shumaker, Loop & Kendrick, LLP (In re Fundamental Long Term Care, Inc.)*, 2021 WL 222779, at *4 (M.D. Fla. Jan. 22, 2021) (quoting *In re Garcia*, 532 B.R. 173, 182 (B.A.P. 1st Cir. 2015)).

[30] *Id.* (quoting *Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R. 470, 479 (S.D.N.Y. 2013)).

to comply with Rule 9011 without an extension, and the benefit of the potential avoidance actions to the bankruptcy estate.

Tee-Off Temps did not file a written objection to the specific facts asserted in the Amended Extension Motion, and it did not identify any disputed facts at the July 22 hearing. And despite having moved for reconsideration, Tee-Off Temps has yet to identify a single disputed fact; it has provided only a blanket statement that it disputes the Plan Administrator's factual assertions.

Here, given the Plan Administrator's sworn statement and Tee-Off Temps' failure to identify a single fact in dispute, the Court finds it had ample evidence to find that "cause" exists to extend the § 546(a) deadline without the need for an evidentiary hearing.

## III. CONCLUSION

For the reasons set forth above, the Court concludes it had discretion to extend the § 546(a) deadline "for cause" under Bankruptcy Rule 9006(b) and that there was no need for an evidentiary hearing. Therefore, the Court concludes it appropriately exercised its discretion to extend the § 546(a) deadline to September 20, 2026.

The Court will enter a separate order denying the Reconsideration Motion.

The Clerk's office is directed to serve a copy of this order on interested parties via CM/ECF.